Nott, J.,
delivered the opinion of the court:
This is an action brought to recover $2,201, for the pay of a military officer between the date of an order dismissing him from the service and the date of its revocation.
It appears that two citizens preferred charges against Major Montgomery for disloyal sentiments during the war, and for a grossly scurrilous attack on the President of the United States. He was summarily dismissed the service by the following order:
“Wae Department,
“Adjutant Oeneral’s Oeeice,
“ Washington, July 18,1863.
“By direction of the President, Major Alexander Montgomery, quartermaster United States Army, is hereby dismissed the service of the United States.
“By order of the Secretary of War.
“E. D. TOWNSEND,
“ Assistant Adjutant General.”
Upon learning of his dismissal, Major Montgomery did what an officer and gentleman should do when falsely accused; he denied the charges and demanded a court-martial.
On the 13th August, 1863, Mr. Lincoln, in the kindness of his *96 heart and with the quick justice of his simple and honest nature, wrote to the Judge Advocate General as follows :
“ Executive Mansion,
“ Washington, August 13,1863.
“Dear Sir: Major Alexander Montgomery, who has been dismissed from the regular army, is now with me, and denies the charges upon which he was dismissed, and which he says he now for the first time has officially heard. As the principal charge can be given the appearance at least of being merely personally offensive to me, and as he denies it, I think he should have a court-martial, rather than to abide by arbitrary dismissal.'
“Please give him the court-martial if he desires it.
“Tours truly,
“A. LINCOLN.
“Judge Advocate General.”
The court-martial, however, could not be granted while the officer was out of the service, and consequently nothing was done.
On the 28th of November, Captain McFerrau was promoted major in the Quartermaster’s Department, to rank from July 17, 1863, vice Montgomery, dismissed. ITe ivas subsequently nominated to the Senate by the President for that position, and his appointment was confirmed by the Senate on the 20th of April, 1864. Major McFerrau apparently assumed the rank and duties of the promotion and received the pay. “ But the commission based upon the |>romobion and subsequent nomination and confirmation of Captain McFerrau, as major and quartermaster, was never issued from the Adjutant General’s Office, although prepared, signed, aud sealed, and in all respects, with the exception of its issue, a perfect commission.”
On the 2oth May, 1864, after the confirmation by the Senate of Major McFerran’s appointment uvice Montgomery, dismissed,” the President issued to the War Department the following informal direction:
“If it can be legally done, let Major Montgomery be restored to his position from which ho was removed.
“A. LINCOLN.
“ May 25, 1864.”
*97 Upon tbis direction tbe Secretary of War indorsed:
“Bespectfully referred to tbe Adjutant General, with directions to issue an order for tbe restoration of Major Montgomery, provided there be a vacancy. He will be ordered to California.
“By order of tbe Secretary of War.
“JAS. A. HAEDIB,
“ Oolonel cmd Inspector General.”
But no vacancy then existed, and no order of restoration was then issued.
On tbe 14th June, 1864, however, the following report was made, and order of revocation issued:
“ There is now a vacancy in tbe grade of major in tbe Quartermaster’s Department, consequent upon tbe promotion of Major Eobert E. Clary, 15th April, 1864, vice Sibley, resigned.
“ Bespectfully submitted.
“ S. F. CHALFIN, A. A. G.
“ A. G. O., June 14,1864.”
“WAR DEPARTMENT,
uAdjutcmt General’s Office, June 14, 1864.
“ Tbe President of tbe United States directs that paragraph 11 of Special Orders No. 318, dated July 18, 1863, dismissing Major Alexander Montgomery, quartermaster United States Army, be revoked.
“Major Montgomery will be restored to bis former position and rank in bis department; and will appear on tbe Army Eegister as if be bad not been dismissed.”
As regards relative rank in tbe list of quartermasters, it may be noted, though not perhaps material to tbe decision which we render, that Major Montgomery, at the time of bis dis- . missal, was the- third of tbe quartermasters of tbe rank of major, authorized by various acts of Congress; that be did not retake bis former position on tbe revocation; that Major Miller succeeded in relative rank to Major Clary; and that Major Montgomery succeeded to Major Miller; and that the officers below remained undisturbed either by the promotion of Major Clary or tbe restoration of Major Montgomery.
But tbe case was further complicated. Tbe War Department, in apparent ignorance of , tbe law as settled by tbe Supreme Court in Marbury v. Madison, (1 Cranch R., p. 137,)— that tbe signing and sealing of a commission complete an *98 appointment, and that tbe officer having a right to the office has a consequent right to the commission — withheld the commission of Major McFerran, dated 17th July, 1863, and procured his renomination to the Senate on the 20th January, 1865, to rank from the 30th November, 1863, vice Belger, dismissed. This renomination was confirmed by the Senate, and a second commission was issued. But as to the rights of Major McFerran in the premises, we are not called upon to adjudicate.
There have been two decisions rendered by this court upon similar orders of revocation by the President, which appear to have caused much trouble and some alarm in the Treasury and War Departments, and which have been carried, in contemplation, there, further than the facts of those cases will either warrant or require. In Captain Smith’s Case, (2 C. Cls. R., p. 236,) and Captain Winter’s Case, (3 id., 136,) the officers were — the one an assistant quartermaster and the other a commissary of subsistence, and both were in the volunteer service. Their offices were not limited by law, and were not considered in any way as filled by others. But in the regular army the number of quartermasters of the rank of major was established, and, consequently, limited by law, and the number during the claimant’s ouster was full. It was not in the power of the President (as it certainly was not within his intent) to indirectly exceed the number of quartermasters fixed by law, nor restore to the claimant the pay which had been lawfully and rightfully paid to an officer lawfully and rightfully entitled to receive it.
In a third case which came before the court, Captain Reynolds’s Case, (3 C. Cls. R., p. 197,) we recognized the principle that the order of revocation must be taken upon such conditions as the President imposed. The present case carries us a step further and renders it necessary to hold that the claimant must -take the revocation with such conditions as subsequent legal occurrences must necessarily create. The sum of these decisions and that now rendered will stand thus: An order of the President dismissing a military officer may be revoked by the same President that issued it; and if the office be not filled at the time of revocation, and if the pay thereof has not been paid lawfully to another, the dismissed officer will be entitled to the office and to the pay ad interim; but if the office *99 be filled by another, the revocation must remain suspended till a vacancy occur; and if the pay atl interim has been paid lawfully to another, the officer must take his reinstatement cum onere. The defendants cannot be held to pay a second time.
The judgment of the court is that the petition be dismissed.